1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7              FOR THE DISTRICT OF ARIZONA
8
9   Alexandre Pchenitchnikov,          )   No. CV-05-2149-PHX-JWS (LOA)
                                       )
10              Petitioner,            )   **REPORT AND RECOMMENDATION**
                                       )
11  vs.                                )
                                       )
12  Alberto R. Gonzales, et al.,       )
                                       )
13              Respondents.           )
    _____)
14
15          This matter arises on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28
16  U.S.C. § 2241.  (document # 1) Petitioner claims that he is being illegally detained by the
17  Immigration and Naturalization Service ("INS").   Respondents filed an Answer (document #
18  6) to which Petitioner replied.  (document # 11)
19                          **BACKGROUND**
20          Petitioner is a native and citizen of Russia who entered the United States on September
21  14, 1997 as a nonimmigrant B-2 visitor who had authorization to remain in the United States
22  until March 14, 1998.  (Respondents' Exh. 1) Petitioner did not leave the United States on or
23  before March 14, 1998.
24          On August 28, 2001, Petitioner married a United States citizen, Tatyana Popkova.  On
25  August 29, 2001, Petitioner applied for adjustment of status pursuant to Immigration and
26  Nationality Act ("INA") § 245.  (Respondents' Exh. 2) Petitioner and his wife failed to appear
27  for interviews that were scheduled on February 25, 2002 and May 21, 2002.  Consequently, on
28  July 9, 2002, Petitioner's application was denied due to abandonment.  (Respondents' Exh. 3)

1

2      On July 9, 2002, Petitioner was issued a Notice to Appear charging him with

3  removability for having remained in the United States longer than permitted pursuant to INA

4  § 237(a)(1)(B). (Respondents' Exh. 4) On August 1, 2002, the Immigration Court sent a notice

5  of hearing to Petitioner stating that his case was scheduled for a hearing on September 30, 2002.

6  The notice was sent to the last known address that Petitioner had provided to the Department

7  of Homeland Security ("DHS"). (Respondents' Exh. 5)   Petitioner did not appear at the

8  September 30, 2002 hearing and the Immigration Judge ordered Petitioner removed to Russia

9  *in absentia*.  (Respondents' Exh. 6) Petitioner evaded immigration officials until he was

10  apprehended by the Arizona Department of Public Safety in 2005.  On March 22, 2005, DHS

11  placed a detainer on Petitioner. (Respondents' Exh. 7) Shortly thereafter, Petitioner was placed

12  in DHS custody for execution of the removal order.  (Respondents' Exh. 8)

13      DHS has made several attempts to obtain travel documents to execute Petitioner's

14  removal.  On May 12, 2005, DHS requested the Consulate of Russia in Los Angeles, California

15  to provide emergency travel documents to facilitate Petitioner's removal to Russia.

16  (Respondents' Exh. 9) The Russian Consulate in turn requested certain documents from DHS.

17   On July 29, 2005, DHS sent a letter and the requested documents, copies of Petitioner's

18  passport and birth certificate, to the Vice Consul of the Russian Federation in San Francisco,

19  California to secure travel documents for Petitioner. (Respondents' Exh. 10) DHS was advised

20  that it could take four months or longer for the documents to issue.

21      On September 14, 2005, Petitioner was interviewed by Vice Consul Sergei Pshenchnny

22  from the Russian Consulate regarding his nationality and citizenship to secure travel documents

23  to Russia.  Mr. Pshenchnny claims that Petitioner provided contradictory information regarding

24  his place of birth or origin.  Mr. Pshenchnny believes that Petitioner provided the Russian

25  Consulate with a "false" passport and states that Petitioner's birth certificate and the allegedly

26  false passport should be forwarded to the Ministry of Foreign Affairs in Moscow for further

27  investigation. (Respondents' Exh. 11)

28

On October 13, 2005, DHS sent a letter to its headquarters in Washington, D.C. stating that DHS had been advised that travel documents for Petitioner would arrive in early November 2005.  (Respondents' Exh. 12) Travel documents did not arrive in early November of 2005. Therefore, on November 22, 2005, DHS sent a notice to the Consulate General of Russia, via facsimile, requesting travel documents for Petitioner.  (Respondents' Exh. 13) On November 23, 2005, Vice Consul Pshenchnny contacted DHS and advised Deportation Officer Francisco Baez that Petitioner's passport appears to be fake and that it needs to be sent to the Ministry of Foreign Affairs in Moscow, Russia (the "Ministry") for further review.   (Respondents' Exhs. 11, 13)  Pshenchnny also informed DHS that the Russian Consulate was unable to issue a travel document for Petitioner and that, in view of the questions regarding Petitioner's passport, only the Ministry in Russia can issue a travel document.  (Respondents' Exhs. 11, 13)  The  record does not contain any evidence indicating whether Petitioner's passport and birth certificate have been forwarded to the Ministry of Foreign Affairs.  Petitioner remains in custody pending the receipt of travel documents.

## ANALYSIS

**I. Petitioner's Claims**

Petitioner asserts that his continued detention following the issuance of a final removal order violates due process.  Respondents concede that Petitioner has a protected liberty interest under Zadvydas v. Davis, 533 U.S. 678 (2001). However, Respondents contend that because Petitioner has impeded the DHS's efforts to effectuate his removal he is not entitled to relief under Zadvydas.  (document # 6)

**A. Zadvydas**

When an alien is found removable and a final order of removal had been entered, the Attorney General ordinarily secures removal of that alien during a 90-day statutory "removal period" during which the alien is detained. See, 8 U.S.C. § 1231(a)(1)(A)-(B). However, many aliens cannot be removed within the ninety-day period for a variety of reasons.

1    In <u>Zadvydas v. Davis</u>, 533 U.S. 678, 687 (2001), the Supreme Court held that the post-

2    removal-period detention provision, 8 U.S.C. § 1231(a)(6), implicitly limits an alien's detention

3    to a "period reasonably necessary to bring about that alien's removal" and does not permit

4    indefinite detention.  <u>Id.</u> at 689.  The Court recognized that the purpose of the statue was to

5    guarantee the alien's presence at the time of his removal.  533 U.S. at 699.  However, the Due

6    Process Clause applies to aliens who have entered the United States, and the Court found that

7    a "statute permitting indefinite detention of an alien would raise a serious constitutional

8    problem." <u>Id.</u> at 690.  The Court held that six months is a presumptively reasonable period of

9    post-removal-order detention. <u>Id.</u> at 701.   The Court established a guideline to assist habeas

10   courts in determining whether a period of post-removal-order detention in excess of six months

11   is permissible.  First, the alien must provide "good reason to believe that there is no significant

12   likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701.  If the alien meets

13   this burden, "the Government must respond with evidence sufficient to rebut that showing." <u>Id.</u>

14   "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows,

15   what counts as the 'reasonably foreseeable future' conversely would have to shrink." <u>Id.</u> at 701.

16   The Court clarified that under its holding "an alien may be held in confinement until it has been

17   determined that there is no significant likelihood of removal in the reasonably foreseeable

18   future." <u>Id.</u>  Therefore, to state a claim under <u>Zadvydas</u>, the alien not only must show post-

19   removal-order detention in excess of six months but also must provide evidence of a good

20   reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

21   future. <u>Id.</u>

22   Zadvydas did not disturb an alien's statutory duty to affirmatively assist the DHS in

23   obtaining travel documents.  Section 243(a)(1)(B) of the INA, codified at 8 U.S.C. §

24   1253(a)(1)(B), provides that an alien subject to a final order of removal who "wilfully fails or

25   refuses to make timely application in good faith for travel or other documents necessary to the

26   alien's departure" is subject to criminal fines and/or imprisonment of up to four years.  <u>Id.</u>

27   Additionally, 8 U.S.C. § 1231(a)(1)(C) provides that the 90-day "removal period shall be

28

1   extended . . . and the alien may remain in detention during such extended period if the alien fails

2   or refuses to make timely application in good faith for travel or other documents necessary to

3   the alien's departure . . . . " Id.  Mindful of the foregoing, the Court will consider Petitioner's

4   claim.

5        **B.  Application of <u>Zadvydas</u>**

6        *1.  Petitioner's Showing*

7        Here, on or about July 9, 2002 Petitioner was issued a Notice to Appear.  Petitioner,

8   however, was not taken into custody until March 22, 2005.  Thus, the 90-day statutory removal

9   period set forth in 8 U.S.C. § 1231(a)(6) expired in June of 2005 and the presumptive 6-month

10  period expired in September of 2005.   To date Petitioner has spent over one year in custody

11  awaiting removal, twice the amount of time that the Supreme Court considered presumptively

12  reasonable in Zadvydas.

13       The Russian Consulate in the United States has indicated that it cannot issue a travel

14  document for Petitioner because there is an issue regarding the authenticity of his passport.  In

15  November of 2005, Russian Vice Consul Pshenchnny advised Deportation Officer Francisco

16  Baez that Petitioner's passport appears to be fake and that it needs to be sent to the Ministry of

17  Foreign Affairs in Moscow, Russia (the "Ministry") for further review.   (Respondents' Exhs.

18  11, 13)  Pshenchnny also informed DHS that the Russian Consulate was unable to issue a travel

19  document for Petitioner and that, in view of the questions regarding Petitioner's passport, only

20  the Ministry in Russia can issue a travel document. (Respondents' Exhs.  11, 13)   The record

21  does not contain any evidence indicating that Ministry has reviewed Petitioner's passport and

22  birth certificate or otherwise responded to the request for a travel document for Petitioner.

23  There is no evidence indicating that the Russian Consulate's position about its inability to issue

24  a travel document has changed.

25       The period of Petitioner's post-removal-order detention exceeds 13 months.   Thus, the

26  "reasonably foreseeable future" must be near.  Shefqet v. Ashcroft, No. 02 C 7737, 2003 WL

27  1964290, * 4 (N.D. Ill., April 28, 2003)(granting  habeas  relief  when  post-removal-order

28
                                            - 5 -

detention exceeded 17 months)(citing Zhou v. Farquharson, 2001 U.S. Dist. Lexis 18239, at *

3-4 (D. Mass. Oct. 19, 2001)(granting habeas relief when post-final-order detention period was

13 months)).  Petitioner has submitted evidence that the Russian Consulate will not issue a

travel document for Petitioner.  In view of the foregoing, the Court finds that Petitioner has

established that there is no significant likelihood of removal in the reasonably foreseeable

future.  Accordingly, the burden shifts to Respondents to rebut that showing.  Zadvydas, 533

U.S. at 701.

*2.  DHS Response*

Respondents argue that because Petitioner has provided misleading information and  a

fake passport to the Russian Consulate,  Petitioner's  lack of cooperation justifies his continued

detention.    Respondents cite Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003) in support of their

claim that Petitioner's lack of cooperation justifies his continued detention.  In Pelich, the Ninth

Circuit held that an alien's indefinite detention did not violate due process where the alien's

detention was only indefinite because he refused to cooperate with INS efforts to remove him.

329 F.3d at 1061.  In Pelich, petitioner gave INS conflicting information regarding his name,

his parents' names, his parents' birthplaces and residences, and his birthplace and nationality.

Id. at 1059.  At different times, petitioner identified his birthplace as Germany and Poland.  Id.

at 1058.  He claimed that he was born in 1957 or 1947.  Id.  He identified his father's birthplace

as Germany or Israel and claimed that his mother was born in Monaco or that he did not know

her birthplace.  Id.   Additionally, petitioner refused to complete an application for a Polish

passport to facilitate his removal. 329 F.3d at 1058.  The Ninth Circuit held that petitioner was

a non-cooperating detainee, he could not legitimately challenge his detention because his own

conduct was the cause of his detention.  Id. at 1061.  The Court stated that because petitioner

could effectuate his own removal by providing the necessary information, his detention was not

indefinite.  Thus, petitioner was properly detained pursuant to 8 U.S.C. § 1231(a)(1)(C).  Id.

Unlike Pelich, in this case Respondents have not submitted any detailed evidence of the

misleading information which Petitioner allegedly provided to the Russian Consulate.

1    Petitioner has completed the application for travel documents and has produced his passport and

2    birth certificate.  Although the Russian Consulate alleges that Petitioner's passport is false, it

3    is the same passport that Petitioner used to obtain a visa from the United States Embassy in

4    Moscow and to enter the United States in 1997.  Regardless of whether Petitioner's passport is

5    false, to date, the Russian Consulate has denied Petitioner's application for travel documents.

6

7         This situation is unlike Pelich.  Indeed, in Pelich the court stated that "[i]f Pelich fills out

8    the application, it's denied and the INS *still* won't let him go, we would have a different case."

9    329 F.3d at 1061 n. 3 (emphasis in original).  The Court stated that it did not need to reach that

10   "more challenging" issue because petitioner had not yet completed the passport application.  Id.

11   Contrary to Respondents' assertion, in this case, Petitioner has cooperated with DHS and the

12   Russian Consulate to secure travel documents.  He has provided his passport and birth

13   certificate and completed an application for travel documents.  (document # 11) Petitioner

14   claims that during his interview with Mr. Pshenchnny, the authenticity of Petitioner's passport

15   was never questioned. Rather, he claims that Mr. Pshenchnny told Petitioner that he could not

16   issue travel documents because Petitioner was holding a passport issued by the former Union

17   of Soviet Socialist Republics ("U.S.S.R." or "C.C.C.P.").  (document # 11, Exh. E)  Petitioner

18   further claims that the passport that is now being questioned is the same passport that he used

19   in 1997 to obtain a visa from the United States

20        Respondents also claim that DHS is making efforts to effectuate Petitioner's removal.

21   There is evidence that DHS contacted the Russian Consulate in May, July, and November of

22   2005.  However, there is no evidence that DHS has made any further efforts to remove

23   Petitioner after it was informed that the Russian Consulate could not issue travel documents and

24   that Petitioner's request would have to be handled by the Ministry of Foreign Affairs in

25   Moscow, Russia.  See Kacanic v. Elwood, No. CIV A 02-8019, 2002 WL 31520362, at * 5

26   (E.D.Pa., November 8, 2002)(INS failure to make timely efforts to remove petitioner one factor

27   in finding that petitioner's removal was not likely in the reasonably foreseeable future.)

28

1    Respondents have not informed the Court about the status of Petitioner's travel documents, such

2    as whether the request has been forwarded to the Ministry of Foreign Affairs in Russia, whether

3    DHS has received any assurances that travel documents are forthcoming, or whether the Foreign

4    Ministry is even willing to issue a travel document to Petitioner at all.  <u>Shefqet</u>, 2003 WL

5    1964290, at * 5 (citing <u>Thompson v. INS</u>, 2002 U.S. Dist. Lexix, 23936, at * (E.D.La., Sept. 13,

6    2002)(finding that government failed to meet burden that removal is reasonably foreseeable in

7    part because there was no evidence that the government of Guyana had responded to the request

8    for travel documents)).   Sufficient time has passed for the DHS to obtain a travel document

9    because that request has been pending for over one year.  Petitioner need not show that removal

10   is impossible.  <u>Zadvydas,</u> 533 U.S. at 702.   Although there may exist some possibility that

11   Petitioner could be removed, his post-removal-order detention has been sufficiently long that

12   an unsubstantiated possibility does not satisfy Respondents' burden.  <u>Mohamed v. Ashcroft</u>, No.

13   C01-1747P, 2002 WL 32620339, at * 1 (W.D.Wash, April 15, 2002)(holding that government

14   did not meet its burden under <u>Zadvydas</u> because it provided no evidence regarding how or when

15   it expected to obtain travel documents or that the foreign government was cooperating).

16   **II.  Conclusion**

17           Petitioner has shown that there is no significant likelihood of his removal in the

18   reasonably foreseeable future and Respondents have not rebutted this showing.

19           In accordance with the foregoing,

20           IT IS HEREBY RECOMMENDED that Respondents be given until July 30, 2006 to

21   remove Petitioner from the United States.   Respondents should be ordered to submit status

22   reports to the Courts regarding Petitioner's removal on June 30, 2006 and July 30, 2006.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28
                                              - 8 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IT IS FURTHER RECOMMENDED that if Respondents fail to remove Petitioner on or before **July 30, 2006**, Petitioner's writ of habeas corpus (document # 1) should be **GRANTED** on **August 5, 2006** and Petitioner should be released on conditions suitable to DHS.

DATED this 8th day of May, 2006.

Lawrence O. Anderson
United States Magistrate Judge

- 9 -