UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| ALEXANDRE PCHENITCHNIKOV, | ) | |
| | ) | |
| Petitioner, | ) | 2:05-cv-02149-PHX  JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| ALBERTO R. GONZALES, *et al.*, | ) | [Re: Report and Recommendation] |
| | ) | |
| Respondents. | ) | |
| | ) | |

## I.  MATTER PRESENTED

At docket 14,  Magistrate Judge Lawrence Anderson filed his report and recommendation, recommending that the court grant the petition for writ of habeas corpus at docket 1 if respondents have not removed petitioner from the United States by July 30, 2006.  Respondents Alberto R. Gonzales, *et al.*, filed their objections to the report and recommendation at docket 15.  Petitioner did not file objections to the report and recommendation.

## II.  BACKGROUND

On September 14, 1997, petitioner Alexandre Pchenitchnikov entered the United States as a nonimmigrant B-2 visitor with authorization to remain in the United States until March 14, 1998.   Petitioner traveled on a Union of Soviet Republics passport,

identifying Russia as petitioner's place of birth.[1]  Petitioner did not leave the United States by March 14, 1998.

On August 28, 2001, petitioner married Tatyana Popkova, a United States citizen.  On August 29, 2001, petitioner applied for adjustment of status pursuant to Section 245 of the Immigration and Nationality Act ("INA").  On May 29, 2002, petitioner's application was denied due to abandonment.[2]  On July 9, 2002, the Department of Justice issued a Notice to Appear, charging petitioner with removability for remaining in the United States longer than permitted under INA § 237(a)(1)(B).[3]  On August 1, 2002, the immigration court sent petitioner a notice that his case was scheduled for hearing on September 30, 2002.[4]  Petitioner did not appear at the hearing, and the immigration judge ordered petitioner removed to Russia *in absentia*.[5]  Petitioner was apprehended by the Arizona Department of Public Safety in 2005.  On March 22, 2005, DHS issued a detainer on petitioner.[6]  On March 24, 2005, petitioner entered the Florence Service Processing Center.[7]

On May 12, 2005, DHS requested the Russian Consulate in Los Angeles, California, to issue a travel document to facilitate petitioner's removal to Russia.  DHS

---

[1] Doc. 6, exh. 1.

[2] Doc. 6, exh. 2.

[3] Doc. 6, exh. 4.

[4] Doc. 6, exh. 5.

[5] Doc. 6, exh. 6.

[6] Doc. 6, exh. 7.

[7] Doc. 6, exh. 12.

alleged that petitioner was a native and citizen of Russia through birth at Novgorod, Russia.[8] In response to a request from Sergei Pshenchnny, the Russian Vice Consul, petitioner completed an application form, which DHS forwarded to the Vice Consul on July 29, 2005.

On September 12, 2005, DHS issued a decision to continue detention on the grounds that communications with the consulate indicated that a travel document to accomplish petitioner's removal to Russia would be forthcoming in the foreseeable future. The decision further stated that if petitioner was not released or removed from the United States by September 23, 2005, jurisdiction of the custody decision would be transferred to the Headquarters Post Order Detention Unit ("HPODU"), which would make a final determination regarding his custody.[9]

On September 14, 2005, Vice Consul Pshenchnny interviewed petitioner about his nationality and citizenship.[10] On October 13, 2005, DHS sent a letter to HPODU, stating that the Russian Consulate expected to make a decision about whether to issue a travel document by the first week of November 2005.[11] On November 22, 2005, via facsimile, DHS again requested the Russian Consulate to respond to its request for a travel document for petitioner. A handwritten note on the facsimile transmission sheet suggests that Vice Consul Pshenchnny called DHS on November 23, 2005, and said

---

[8]Doc. 6, exh. 9.

[9]Doc. 6, exh. 12.

[10]Doc. 6, exh. 11.

[11]Doc. 6, exh. 12.

that he believed petitioner's passport was fake and that he had sent petitioner's information to Russia.[12]

On July 21, 2005, petitioner filed the underlying petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his continued detention.[13] Respondents filed a response in opposition to the petition, alleging that "[p]etitioner's refusal to cooperate and affirmative efforts to prevent travel documents from being issued justified his continued detention."[14] Respondents specifically allege that petitioner provided contradictory information regarding his place of birth or origin and that petitioner's passport is fake.[15]

On May 9, 2006, the magistrate judge filed his report and recommendation, concluding that "[p]etitioner has shown that there is no significant likelihood of his removal in the reasonably foreseeable future and [r]espondents have not rebutted this showing."[16] Accordingly, the magistrate judge recommended that the court give respondents until July 30, 2006, to remove petitioner from the United States and order respondents to submit status reports regarding petitioner's removal on June 30, 2006, and July 30, 2006. The magistrate judge further recommended that if respondents fail to remove petitioner by July 30, 2006, the court should grant petitioner's writ of habeas corpus on August 5, 2006, and petitioner should be released on conditions suitable to

---

[12]Doc. 6, exh. 11.

[13]Doc. 1.

[14]Doc. 6 at 5.

[15]Doc. 6 at 4.

[16]Doc. 14 at 8.

DHS. As of this date, petitioner remains in custody pending receipt of a travel document.

On May 22, 2006, respondents filed their objections to the report and recommendation. Petitioner did not file any objections. The report and recommendation is ripe for the court's review.

### III.  STANDARD OF REVIEW

The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[17] When reviewing a magistrate judge's report and recommendation, the district court reviews *de novo* conclusions of law[18] and findings of fact to which parties object.[19] The court reviews for clear error uncontested findings of fact.[20]

### IV.  DISCUSSION

Citing *Zadvydas v. Davis*, petitioner alleges that his detention of over fifteen months following the issuance of a removal order violates due process.[21] Respondents allege that because petitioner impeded DHS's efforts to effect his removal by providing a false passport and conflicting information about his country of origin or citizenship, he is not entitled to relief under *Zadvydas*.

---

[17] 28 U.S.C. § 636(b)(1).

[18] *Barilla v. Ervin*, 886 F.3d 1514, 1518 (9th Cir. 1989), *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996).

[19] 28 U.S.C. § 636(b)(1).

[20] *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 906 (3d Cir. 1992).

[21] 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) implicitly "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."[22] The court further held that detention for six months is presumptively reasonable. "After this [six]-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."[23]

In his report and recommendation, the magistrate judge found that because petitioner was taken into custody in March 2005, the ninety-day statutory removal period set forth in 8 U.S.C. § 1231(a)(6) expired in June 2005, and the presumptively reasonable six-month period expired in June 2005. Because petitioner's post-removal-order detention already exceeds fifteen months and petitioner submitted evidence that the Russian Consulate will not issue a travel document for petitioner, the magistrate judge further found that petitioner has established that there is no significant likelihood of removal in the reasonably foreseeable future.

The magistrate judge also concluded that respondents have not rebutted this showing. Citing *Pelich v. I.N.S.*,[24] respondents argued that petitioner's continued detention is justified because petitioner provided misleading information and used a fake passport. In *Pelich*, the Ninth Circuit held that "an alien cannot assert a viable

---

[22]533 U.S. 678, 689 (2001).

[23]*Id.* at 701.

[24]329 F.3d 1057 (9th Cir. 2003).

-6-

constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him."[25] The magistrate judge found that unlike in *Pelich*, petitioner here has cooperated with DHS and the Russian Consulate to secure a travel document by providing copies of his passport and birth certificate and completing an application for a travel document. In addition, the magistrate judge found that respondents "have not submitted any detailed evidence of misleading information which Petitioner allegedly provided to the Russian Consulate."[26]

Consequently, the magistrate judge recommended that respondents be given until July 30, 2006, to remove petitioner from the United States and that if respondents fail to do so, the court should grant petitioner's writ of habeas. The magistrate judge based his recommendation in part on the fact that respondents had not provided evidence of any efforts to remove petitioner since November 2005. The magistrate judge also relied on case law providing that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink."[27]

In their objections to the report and recommendation, respondents allege that on April 26, 2006, respondents learned that petitioner is a citizen of Ukraine, and that since then, "significant progress has occurred in obtaining travel documents from the Ukraine."[28] In support of their allegations, respondents attached a DHS memorandum

---

[25] *Pelich*, 329 F.3d at 1061.

[26] Doc. 14 at 6.

[27] *Zadvydas*, 533 U.S. at 701.

[28] Doc. 15 at 2.

indicating that on April 26, 2006, petitioner stated that he was born in Saratov, Russia (formerly the Soviet Union), and is now a citizen of Ukraine.  The memo also indicates that after receiving a copy of petitioner's Ukraine passport from family, respondents sent a copy of the passport, a travel document request, and a completed application to the Ukraine Consulate in May 2006.  Respondents also attached a copy of a petitioner's sworn statement, in which he states that he has an internal passport from Ukraine and has residency there.[29]

After reviewing the record and the report and recommendation, the court finds that the magistrate judge's recommendation was sound based on the information available to him at the time.  The court also finds that the information subsequently provided by respondents warrants a modification of the magistrate judge's recommendation.  Consequently, the court will increase the time period in which respondents must effect petitioner's removal from July 30, 2006, to September 29, 2006.

## V.  CONCLUSION

For the reasons set out above, the court **ADOPTS** the report and recommendation at docket 14, with the following modifications.

It is ordered that respondents shall have until September 29, 2006, to remove petitioner from the United States, and that respondents shall submit status reports to the court regarding petitioner's removal on August 31, 2006, and September 29, 2006.

---

[29] Record of Sworn Statement at 2-5, doc. 15.

It is further ordered that if respondents fail to remove petitioner by September 29, 2006, petitioner's writ of habeas corpus shall be granted on October 6, 2006, and petitioner shall be released on conditions suitable to DHS.

DATED at Anchorage, Alaska, this 7th day of July 2006.


/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT COURT JUDGE